Okay, this is the case of People v. Damien Brayboy, 1-18-1568. You have before you the 1st Division, 1st District, 2nd Division of the Appellate Court, which consists of Aurelia Paczynski, Cynthia Cobb, and myself, James Fitzgerald Smith. Our procedure is as follows. First, the appellant will have the opportunity to raise their case and we will not interrupt you. We'll let you do whatever your position is. At the end of that, we'll ask questions and then we'll let the appellee respond with their position and we'll then ask them questions. Then we'll have the closure by the appellant. If you're ready, you may proceed. Realize this is a case that was before this panel, before both Buffer was my case and Cody was my case, so understand I see two distinct issues here. One is emerging adults and one is intellectual disability and the Supreme Court appears to have made it fairly clear as to the distinction, but we'll be glad to hear what you got to say. Maybe they'll see a different view. Thank you. May it please the Court, my name is Catherine Donahoe and I represent the appellant Damien Brayboy. In this case, Damien Brayboy seeks the opportunity to challenge, through post-conviction proceedings, the 70-year de facto life sentence imposed upon him for offenses committed when he was just 18 years old. In fact, just a few months past his 18th birthday when he made the unfortunate decision to join two older men from his neighborhood to rob a local drug dealer. Your Honor mentioned People v. Cody, which was cited in our opening brief, and just to clarify from the outset that we're not relying on the Cody case at this point in light of the Illinois Supreme Court's decision. Our opening brief set forth that Brayboy's youth and his intellectual disability could be alternative bases for this type of disability. Still provide a basis independent of the Supreme Court's ruling in Cody. So now Damien asks this Court to reverse the denial of his motion for leave to file a successive post-conviction petition and to remand for second stage post-conviction proceedings. His petition and the supporting documentation meet the low threshold of satisfying the cause prejudice test. The state in its brief has not challenged Brayboy's assertion of cause and instead focused on prejudice, so I'll just briefly review his allegations related to cause. He's shown cause for his failure to raise this claim in an earlier proceeding because of substantial changes in the law beginning with Miller v. Alabama and developments in neuroscience research that only recently made this claim available to him. In Miller v. Alabama, the U.S. Supreme Court created a constitutional rule that applies retroactively, and even more recently, the Illinois Supreme Court has recognized that Miller may apply not only to juveniles, but also to individuals 18 years or older, often referred to as emerging adults. And the Illinois Supreme Court also recognizes that Miller applies to a de facto life sentence, such as Brayboy's 70-year term, in addition to a natural life sentence. So the central dispute in this appeal is whether Brayboy has sufficiently alleged prejudice. And Brayboy has satisfied the prejudice prong because he established in his petition that the trial court sentenced him to a 70-year de facto life sentence, but the record does not reflect that the court considered his young age, again, just a few months past his 18th birthday, or any of the attendant characteristics of his youth. So in light of recent jurisprudence that more clearly defines the parameters of proportionate penalties protections afforded to emerging adults, he's established for purposes of the cause and prejudice test that his sentence may have been imposed in violation of these protections. And he should have a chance to more fully develop the record to support this claim in second stage post conviction proceedings. So the proportionate penalties clause of the Illinois Constitution mandates that all penalties be determined in accordance with the seriousness of the offense and the objective of restoring the offender to useful citizenship. And Illinois courts have recognized that this protection extends to Miller protections to some individuals age 18 or over in special circumstances. And Brayboy has sufficiently alleged that those circumstances are present in his case. He was only 18 years old. He was prosecuted based on an accountability theory. And there was evidence that his actions were affected by substantial peer pressure. So when we look at these factors, it suggests that these offenses reflect an unfortunate yet transient immaturity rather than permanent irreparable corruption. And he attached records to his petition that expand on the evidence that was available at the original proceedings, showing that his brain was still developing and that he was in transition from adolescence to adulthood. And the sentencing court in this case very clearly made only a statutory factors in aggravation and mitigation, as well as the evidence and arguments offered by the attorneys. So there's no indication in the record that the court specifically considered his youth or specifically found that he was permanently incorrigible. And various other examples in the Illinois courts have found similar cases require at least a remand to and an opportunity to further explore this, including people versus Ruiz, people versus Johnson, people versus Manyfield, people versus Bland. These are all cases involving 18 or 19 year old defendants, often with discretionary life sentences. But the special circumstances existed and were alleged in those cases. And it's important to note also that Illinois is recognizing that these types of protections, and the ongoing development applies with people past the age of 18, that that line is somewhat arbitrary. And if Damien Brayboy were sentenced today for these offenses, current Illinois law would require he have an opportunity for parole after serving 20 years of his sentence. And so while the record does not reflect that the court considered any of these factors, and Damien has made sufficient allegations that are specific to his case, and show not only that these factors existed at this time, but he found additional information. He found DCFS records from his childhood that he was previously unaware of. Some of those records show that he was evaluated and found in 1992 to be suffering from a one year delay in his development, which is significant when this was just a few years after his 18th birthday. Under Miller, the potential for rehabilitation is really key. So it's notable that he also attached dozens of pages of psychiatric records from the Illinois Department of Corrections, showing that he really did improve after he started serving his sentence. He had extended periods of time where he didn't even need any medications, and he was shown to be coping well with his incarceration. So, again, the question before this court is not whether his claim is ultimately meritorious, but whether the allegations are sufficient to allow him to file his successive petition and fully develop the record and demonstrate the full extent of the effect his young age had on the commission of the offense. And these were very serious offenses, but the central premise of Miller is that even teenagers who commit heinous crimes are capable of change. But right now, Damien Brayboy is going to spend the rest of his life incarcerated for crimes he committed when he was just a few months past his 18th birthday. And so he asked this court to remand for second stage post-conviction proceedings. All right. One thing you really didn't address, I mean, to a point I agree with you, and basically the case that you didn't address, Cody, putting that aside, I go back to Atkins versus Virginia, which the Supreme Court was very definitive that they were not willing to extend the conditions of emerging adults with intellectual disabilities. They were very definitive when they say transient characteristics of youth, characteristics not shared by adults who are intellectually disabled. And then they go on to say rehabilitative prospects of youth do not figure into the sentencing calculation for intellectually disabled adults defendants because the relative statistic nature, the statistic nature is what I'm hammering on, of their conditions means the prospect of a deficiency being reformed at any time in the future by brain development occurs does not apply to them. So you've got a whole different status where they're saying, yeah, we'll buy that he's a youth. He's a youth that may develop, but he's deficient. And can we afford to have a deficient person out there when he can't really function? We do not believe that Atkins should be extended. And they originally with you when we wrote Cody, but now I don't see after they've come down very clearly in several cases saying there is a distinction. We agree that minors should have a second chance, but we're saying we don't see how a deficient person can correct that deficiency, which a minor can, but not a deficient minor. So explain to me how you see that a minor who's deficient, maybe he can rehab himself somewhat, but how is he going to prove himself at least under the current case law? I think it's correct to focus on the ability, the potential for rehabilitation, as you've pointed out. And so again, this is a preliminary successive post-conviction proceedings. And so there were allegations in his petition that if Cody had been affirmed by the Illinois Supreme Court would have supported an alternative basis. But these allegations don't undermine his emerging adult claim because I agree with you, they don't affect that. But when you got a brick wall that says you're addressing something completely separate and distinct, and your separate and distinct argument is correct, but it does not address the case law in his condition. And so that's why I don't see how you can get to a second stage when what's the second stage going to say? Well, yeah, you're right in this condition, but we don't have that condition. We've got a transient characteristic, which he cannot overcome. And let's just say he does somewhat improve. They're still not going to change their position. That's why it seems important to note that the new records that he attached to his petition, including DCFS records from his childhood related to his experience with foster care and his delayed development, show that his development was delayed. And I think show that these are at least sufficient for this stage. He's made a prima facie showing that these were transient characteristics. And it's why it's also important, I think, to look at what we have now, which is those records in his petition from 2010 to 2013. His sentencing in this case was 2006. The offense was 2002. In Menard, he was repeatedly evaluated. He was, for the most part, taking medications for depression. At certain periods, he was taking antipsychotic medications. But he, over the course of those years, these records show that he improved. He didn't need antipsychotic medications. He didn't even need antidepressants for extended periods of time. And the medical professionals evaluating him found that he was coping well. He was doing okay. At the time of sentencing, he was under, as the state's psychiatric witness acknowledged, an intense amount of stress because he had been convicted of these offenses, and he knew he was facing life in prison. And so the characteristics that were on display in the courtroom at sentencing seem to have been transient. So we need to explore this and develop the record. What else has been going on? What else, if the court had been looking for potential rehabilitation, what would the court have found? And because this sentencing was in 2006 before Miller, the court wasn't looking for all of that. And the fact that he had some overlapping psychiatric diagnoses and need for medications at that time, I don't think there's any indication in the record that any of that was permanent. Other questions? Yes. Go ahead. Okay. We know that we can't rely on intellectual disability for the same analysis as juvenile. That's gone. That's not going to happen. And we know that the threshold for juvenile is 18. So that's gone because he was more than 18 by two months. We know that there's a lot of research on emerging adults. My problem is with the legislation that was changed to allow persons under 21 years of age, at the time of the commission of first degree murder, which became effective on June 1st, 2019, can't apply to Mr. Brayboy because he was sentenced in 2006. And I think it's that gap that bothers me. It puts people who were sentenced before the effective date of that change in the truth and sentencing law and their ability to seek parole after 20 years to, these people are sort of in limbo then. We don't know how many defendants there are in the department of corrections that are between the ages of 18 and 21 when they committed their crime. But we do know there were about 180 juveniles who are in the same limbo and committed their crime in 2019. And that's the thing that bothers me. That's the thing that I would like to focus on. Instead of making their act retroactive, the legislature created this gap. And I think that emerging adults fit into that category. And so if we remand this and send it back for a second stage of the post-conviction petition, what would you expect to happen? What would you expect him to be able to do? Well, what's interesting about the change in the parole law is that applies to absolutely everyone between the ages of 18 and 21. And the claim that Mr. Brayboy is making is based on his special circumstances. He doesn't need special circumstances. If this law were applied retroactively, he wouldn't need any special circumstances. He would just need to show, I was 18 plus two months old on the day that I was sentenced. And that was in 2006 and 2019 they changed the law. And I should be able to take advantage of that change in the law. It should be retroactive just based on age alone. And so the point I think for purposes of our general assembly is responding to a pretty high likelihood that people between the ages of 18 and 21 may be entitled to this opportunity to show that they are rehabilitated. But we're not asking that that law, which as you pointed out, only applies to sentencing after June, 2019. I'm not asking that law to apply now, but because he was not protected by that law, we're arguing that he was protected by the extension of Miller and Montgomery to emerging adults. And so if somebody was clearly permanently incorrigible in 2006, they have no opportunity for parole just like him. But he's somebody who at least has made a strong enough showing that he had a potential for rehabilitation. And if he can go have these additional second stage proceedings, and we're not asking for a new sentencing at this point, if he can have second stage proceedings, he can further develop the record because he was not a juvenile, but he was just a few months past his birthday. So if he were a juvenile, it's very, he wasn't, then he's not a juvenile in the law, the bar is 18. So I don't understand why you're not asking for resentencing, because resentencing then would be after the effective date of the legislation that changed the Truth in Sentencing Act, and would allow him to seek parole after 20 years. Also, just as an aside, you said that this was a theory of accountability. I can't agree with it. He was right there. He was one who was talking. He was one whose voice was heard and recognized by one of the victims in this, one of the victims of the home invasion. So you're talking about accountability. I can't buy that. Well, to the first point, it's a higher bar to ask for a new sentencing hearing, and we'd be happy to accept that as a relief. But our point is that he has at least met this more minimal required showing that he, that his allegations are sufficient to show cause and prejudice at this point. Because with, if he could get to second stage, he could get, develop the record further to show his childhood circumstances and things that were not apparent at the time of sentencing, in addition to further explore his potential for rehabilitation. There are no special circumstances. Mental disability does not count. Being over the age of 18 does not count. So I don't see where, I don't even see where you're going with this. I don't see how you can get where you need to go, unless you accept the only option you have is to ask for resentencing. Well, we would just argue the fact that he was only 18, and I, while I understand your point that the accountability theory is not as applicable to the home invasion for the murder, there was evidence that this other individual, Larry Williams, who was significantly older, was 22 years old, that he was the shooter. The state didn't try to prove that Damien Brayboy was the shooter. And he, his, the evidence against him was really his statement, which, in which he explained that Larry Williams was a hurtful person. He was a tough person from the neighborhood that Damien didn't feel he could refuse when he pulled him into this plot to go rob this house, where this drug dealer lived. And the drug dealer is the person who recognized his voice for purposes of the home invasion. But he was the youngest person there. He was there with a 20, 20-year-old and a 22-year-old who pulled him into this plot based on the evidence at trial. Ms. Donahoe, it's not like he was an 18 plus two-month-year-old there with a 45 and a 46-year-old. They were all close in age. So I, you know, they taught us in law school to I, I just think you picked the wrong one. Marcia? Marcia Jacobs. Yeah. I may have pleased the court. I'm Assistant State's Attorney Marcia Jacobs. I'm going to start by picking up on Justice Fitzgerald-Smith's point, talking about Cody. Since defendant is trying to argue there is some overlap, I understand that, that Co, I want to make very clear that Cody does not allow for overlap either. Where Justice Fitzgerald-Smith recognized that the Illinois Supreme Court founded its decision on the fact that intellectual disabilities are this two-edged sword, that at the same time that they reduce culpability, they also make, may make a defendant more dangerous and do, do decrease prospects of rehabilitation. But they also specifically noted that that would be the case where there is evidence of diminished impulse control. And in this case, we know that there's a lot of evidence that defendant had significant impulse control issues. And it started with the jail records from CIRMAC when he was 18, when he was first arrested. They certainly noted those significant issues and even homicidal ideation at that time. But what I want to point out is that as this case progressed through the system and as defendant grew older, he did not grow out of these problems. So in 2005, when defendant was now in his early twenties and Dr. Gutzman evaluated him, she diagnosed him with impulse control disorder at that time. And in 2006, when he was sentenced, defendant was almost 20, he was 22, almost 23 years old. And at that time, she recognized that his psychiatric illness was chronic and recurring. And years later, defendant himself in his own he would have been around 26 years old, that his thought processes were still in part. And from his prison records that he submitted from the years of 2010 to 2013, where he would have been now in his late twenties, I read those very differently than counsel. I read those to see that his judgment was still in part, that he still had a pattern of resisting the medication that he needed. So nothing presented in his pleading suggests that his conditions were transient or that he would grow out of them. In fact, much the opposite. And in fact, even in defendant's opening brief, he characterizes his psychiatric illness as chronic. So we know that adults with mental health problems and intellectual disabilities, they have these problems and they have nothing to do with youth. And Cody tells us that these related to age simply do not afford defendants protections under Miller, which are exclusively fashioned for young offenders based on the very concept that their brains are not fully developed due to age. And while it is true that defendant is now trying to basically argue just about his pleadings, do not support that claim either. Because while we may not yet have specific guidance on what is enough to support such a claim, we know what isn't. And a flat allegation as to age and brain science aren't enough. And instead of defendant must show how that science of brain development due to age applies to his specific circumstances. But here, all we have is original claim that his age coupled with his intellectual disability and his mental health issues were the reason he was entitled to Miller protections. And let me say that defendant never pled that his age was the reason he shared traits with juveniles. He pled that his intellectual disability and mental health problems were the reason he shared traits with juveniles. He specifically said that his immaturity, poor judgment and susceptibility to peer pressure when he committed this crime were due to his intellectual disability and mental health problems, not his age. So while the people do not concede that the pleadings would have been sufficient to support his original claim, they do nothing to support his now claim that age alone entitles him to Miller protections. And I do want to mention the cases such as Franklin and Savage and the other cases that came out very recently to the extent that those courts allow defendants to plead that an IQ or a mental health issue or a drug addiction issues unrelated to age were sufficient to support a Miller claim, which is exclusively based on age and age-related. Those cases should not be followed. And then next, I do want to talk about defendant's individualized sentencing hearing where he could have been sentenced to as low as 26 years. The court had the discretion to sentence him to 26 years, far lower than the 40-year, what we now know is a de facto life sentence for juveniles. And also this sentencing hearing, the defendant's age and intellectual disability and mental health issues were squarely before the court. The PSI reflected his age and intellectual disability and that he was treated at CIRMAC and prescribed psychotropic medications. And Dr. Guzman testified right before that sentencing hearing. And she referred to his CIRMAC hospitalizations and his heart growth hospitalization, which was where he was hospitalized prior to being arrested in this case. And she noted that at the time of his sentencing hearing, he was on antidepressants and antipsychotic medications to treat his illnesses. And his counsel fully argued that he had a history of psychiatric conditions, that throughout his education, he was diagnosed with learning disabilities and behavioral disabilities, that he was sent to a special academy due to his behavioral and psychiatric problems, that he deteriorated since he was convicted. So all of this mental health information was properly and relevant and presented to this sentencing hearing as general mitigation evidence, which defendant does not deny. But what defendant does attempt to do is conflate these issues with a Miller age-based brain science in order to elevate this general mitigation to a constitutional deprivation, but we now know from Cody, these issues are ancillary. They are divorced from Miller protections, which are strictly based on age. So all defendant really has now is that the sentencing court didn't consider his general mitigation evidence enough. He's looking for an opportunity to have it reweighed. This is not on a constitutional level. So where the defendant was afforded this individualized sentencing hearing, where the judge heard all of this mitigation and could have sentenced him to 26 years. And let me also say, while the judge did not make many specific findings, we know that when all of this information was presented, it is presumed. He is presumed to have considered it under the law. And let me point out that the and made its findings. So the fact that the judge did not make explicit findings, does not negate the fact that all of this information was presented and it was presumed that he considered it. So we asked this court to follow cases like people versus carry on and people versus handy, which recognize that the Harris and the Thompson and the house defendants were not in the same position as him. Those courts could not consider their individual circumstances because they were subject to mandatory life sentences. The Harris, the trial court in Harris lamented, I am sorry that the sentencing perimeters are such that my options are somewhat limited. And the reviewing court in house repeatedly expressed that the statute took away the trial court's discretion to consider mitigating factors, such as the defendant's lack of prior violent criminal history, which is very unlike our defendant here, who is far more culpable. As Justice Puchinski pointed out, there's evidence he was the mastermind of the crime, the victim testified, he spoke first, he spoke the most, he was the most aggressive, he personally threatened the victim while he personally was armed with a gun. The co defendant, the third co defendant in this case says it was this defendant who was the, who set up the crime. And it was this defendant's idea, not the one that this defendant wants to blame it on. There was violence in this defendant's background. He had a, he had a aggravated criminal sexual assault when he was a juvenile. And the facts of this case of being a home invasion involving two little boys, where their father was murdered while he was trying to protect them are all far more aggravating than the defendant in house. So in as much as this defendant was in the same situation as those defendants, his his pleadings do not support a legally or factually cognizable claim based on his intellectual disabilities and mental health disabilities, or even just his flat allegation of his age based claim. So we ask that this court affirm the trial court's denial of his leave to file his successive petition. Cynthia, I forgot to give you a chance to respond to Catherine, if you had anything. That's all right. No, I have nothing. Thank you, Justice. All right. Any questions now as to the state? All right, Catherine, you can fire back. Sure. Well, I just like to point out that the state referred to the mitigation evidence at And so that really highlights something. He did not have the opportunity to present mitigation evidence. As far as the Miller characteristics, those factors, it was considered and we don't know how the court considered it. While it's correct, the court wasn't required to make a specific finding on the record based on the law at that time. There's really just no indication that the court did consider his youth as any kind of mitigating evidence, just because he may have been, the court was aware that Brayboy was 18 years old, the court. And at this point, the state is arguing that all of these traumatic things that happened in Damien's childhood are a two edged sword, but it looks like the sword is just going in the direction of hurting him because of his traumatic childhood, where he never knew who his father was. His mother was an absent drug addict who is now deceased. He was raised as one of eight children by his grandmother, and he struggled. He was in foster care. He did not finish his education. He had impulse control. He had delayed development. It was apparent from these records that his mother abused drugs while pregnant with him. And so he struggled as a child. And this is not a sign of permanent mental illness that makes him irredeemable. And especially pointing to Dr. Gutzman's evaluation of him at the time of his sentencing. Even she acknowledged that he was under an immense amount of stress, and that this could explain his behaviors and his accusing Brayboy. Of course, he was not just a lookout, or he was in this house for these crimes. They were all masked, and it's not clear who exactly did what, other than some voice lineups. But the state didn't present any evidence at trial that Brayboy was the shooter. The other defendant alleged that in trying to escape blame himself. And Brayboy consistently asserted that it was Larry Williams who orchestrated this, brought him along, and was the shooter. So again, at this point, there's a lot of evidence in there that needs to be explored further in second stage post-conviction proceedings, because these were very serious crimes. But Mr. Brayboy was just 18 years old, and the court did not, there's no indication in the Thank you. Any questions? No. Well, thank you both very much. You both argued very well. This is an area I'm sure that's going to go on for a while, because there appears to be about eight to ten cases pending here or there. So we'll see how they go. And I appreciate your in-depth knowledge of this area better than mine, I have to say. So thank you very much. Your briefs were excellent, and we'll let you know as soon as we figure out how we're going to go. Thank you.